24777. BROWN *v.* CITY OF UNION POINT.

DECIDED DECEMBER 9, 1935.

*Joseph P. Brown,* for plaintiff.
*Noel P. Park,* for defendant.

JENKINS, P. J. Certain language used in *Duke* v. *Rome,* 20 *Ga.* 635, 636, as a negative pregnant, and quoted in *Bartlett* v. *Columbus,* 101 *Ga.* 300, 303 (28 S. E. 599, 44 L. R. A. 795), is relied on by the plaintiff and is as follows: "Can an action in any form be maintained against a municipal corporation for an error in judgment, only where exercising judicial functions, *where no corruption and malice is imputed?* We think not. Just as well upon principle sue this or any other court." (Italics ours.)

This language is to be taken as obiter, being in no wise necessary to the decision of either of those cases. The former involved the right to recover damages against a city merely because its mayor and council had failed, in the exercise of their governmental functions, to grant a retail liquor license. The latter was an action because of false imprisonment, under an irregular, erroneous, and void judgment of a municipal court, for the violation of a city ordinance, and was based on the merely illegal exercise of legislative and judicial powers. Neither the law nor the facts of either case presented any question of corruption, malice, willfulness, or wantonness; and in determining that the city was not liable, it was necessary only to apply the settled general rule that a city is not responsible for the torts of its officers or agents where committed under governmental powers in the exercise of legislative or judicial functions.

In *Gould* v. *Atlanta*, 60 *Ga.* 165, 166, 167, a mayor and council were charged with having willfully, wantonly, and maliciously passed a resolution subjecting non-resident plaintiffs to a city tax, for the purpose of preventing them from competing with city merchants. No question appears to have been there presented or decided as to any legal basis for the city's liability, except the general principle, as stated in the opinion, that "the city government had as little right to attack them, in the way alleged in the declaration, as it had to attack the oldest and most reputable merchant in the community." The question of the city's liability for an exercise of governmental functions, either with or without willfulness, wantonness, or malice, seems not to have been raised or discussed. Therefore these cases can not be taken as sustaining the principle contended for by the plaintiff, that, even though a city may not be held liable for the merely unlawful acts of its police and other officers, done in the performance of legislative or judicial duties under governmental functions, yet the city will become liable if such acts were done corruptly, willfully, wantonly, or maliciously. So to hold would run counter to the plain and specific adjudications of our Supreme Court, and would have the effect in many cases of nullifying both section 69-307 and section 69-301 of the Code, which declare that municipalities shall not be liable for *"the torts"* of their "policemen or other officers engaged in the discharge of the duties imposed on them by law," or "for failure to

perform, or for errors in performing, their legislative or judicial powers." These sections do not suggest any intention to distinguish between torts of nonfeasance or misfeasance committed by negligence, and other torts committed corruptly, maliciously, willfully, or wantonly. So to hold would subject municipalities to the passions, whims, and vagaries of all their officers, even when they are performing strictly and unquestioned governmental powers and duties, such as in assaults and batteries by arresting officers, for which it is universally held that cities are not responsible. Such a rule would have the practical effect of creating a jury issue in nearly every municipal tort case, despite section 69-307, if it be merely alleged in the petition that the municipal officer acted corruptly, or willfully, wantonly, and maliciously.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*